Kellie and Steven also provided testimony regarding their parental fitness. Both parents testified that they are capable of handling the day-to-day aspects of the children's lives, and both parents produced witnesses who testified that each party is a fit parent. The attorney ad litem recommended joint custody and formulated the visitation schedule that was later adopted by the court.
The circuit court entered the divorce decree on August 26, 2016. The decree sets forth that the parents share joint custody of their minor children and that Kellie has primary custody. The decree specifies that during the school year, the children are with Steven every other Thursday through Monday. Steven is also allotted an additional overnight visit on the opposite Tuesday beginning after school and returning the children to school on Wednesday morning. Holidays and summer vacation are split evenly between the parents and rotated yearly. The parties are ordered to cooperate, be civil toward each other, foster love, respect, and communication between the children and the other parent, communicate with each other about the children's activities and all medical issues, keep each other informed of any address or contact information changes, and in no way interfere with the other parent obtaining necessary information about the children. In the order, the circuit court reduced Steven's child support obligation to $349 per month "based on the additional time he keeps the children."
Kellie filed a timely notice of appeal.
II. Points on Appeal
A. Joint Custody
For her first point on appeal, Kellie argues that the circuit court erred in designating the custody arrangement in the decree as "joint custody" because "the parties do not have an 'approximate or reasonable equal division of time with the *868 child' and therefore this is not joint custody." On this point we affirm.
We perform a de novo review of child-custody matters, but we will not reverse the circuit court's findings unless they are clearly erroneous. Taylor v. Taylor , 353 Ark. 69, 110 S.W.3d 731 (2003). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. Smith v. Parker , 67 Ark. App. 221, 998 S.W.2d 1 (1999). We recognize and give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. It has often been said that we know of no case in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as when the interests of minor children are involved. Carver v. May , 81 Ark. App. 292, 101 S.W.3d 256 (2003).
Our legislature has determined that it is the public policy of our state to favor joint custody. See Ark. Code Ann. § 9-13-101(a)(1)(A)(iii) (Repl. 2015). For the purposes of the statute, "joint custody" means "the approximate and reasonable equal division of time with the child by both parents individually as agreed to by the parents or as ordered by the court." Ark. Code Ann. § 9-13-101(a)(5). Recently, in Cooper v. Kalkwarf , 2017 Ark. 331, at 15, 532 S.W.3d 58, 67, our supreme court emphasized that the legislature intended that joint custody may exist when the division of time is only approximately equal, holding that "the joint-custody arrangement does not necessarily involve a precise '50/50' division of time."[2]
In Cooper , as in the instant case, the decree set forth that the parties shared joint custody with primary custody in the mother, and our supreme court held that this language was ambiguous on its face. Id. , at 11. The Arkansas Supreme Court held that the decree awarded the father nearly equal time with the child, that "it is unclear from the language in the decree whether the parties had 'joint custody,' " and that "the circuit court was correct in reviewing the parties' subsequent statements and conduct."
In the instant case, Kellie simply argues that the circuit court erred in referring to the custody arrangement as joint custody because the decree does not divide the parents' time with the children approximately equally. Kellie does not assert that parental conduct supports her argument that true joint custody does not exist; thus, we are limited to reviewing only whether the circuit court's division of time is approximately equal.
With that in mind, we look to the Glissons' divorce decree. The decree sets forth that during the school year Steven is allotted every other Thursday through Monday, plus an additional overnight visit on the opposite Tuesday (six out of every fourteen days), that in the summer each parent has the children every other week, and that holidays are shared on an alternating schedule. We hold that his arrangement falls within the range of "approximate and reasonable equal division of time with the child" as set forth in Ark. Code Ann. § 9-13-101(a)(1)(A)(iii). We find no error, and we affirm.
B. Appropriateness of Joint Custody
Alternatively, Kellie argues that if this court holds that she and Steven share *869 true joint custody of their minor children, the circuit court erred because joint custody is not in the best interest of the children. Specifically, she argues that Steven is emotionally unstable and should not "have any form of custody of the children," though she asserts that the court should allow some visitation with Steven. Kellie also asserts that Steven is unable to properly handle H.A.G.'s SPD and H.G.'s corn allergy. Kellie's argument is not well taken, and we affirm.
In support of her argument that joint custody is not in the children's best interest, Kellie asserts that Steven is emotionally unstable and refers to her testimony at the trial recounting Steven's emotional outbursts and erratic behavior. She argues that Steven suffers from depression and that he does not take medication that the physician prescribed.
Kellie also asserts that Steven is unable to properly manage their son's SPD, and she refers to her testimony regarding the wedding reception in support of her argument. Kellie also argues that H.G.'s corn allergy requires careful avoidance of corn; however, she does not explain how Steven is incapable of managing H.G.'s allergy or assert that he has not been able to manage it in the past.
Steven responds that the evidence supports the circuit court's decision to award joint custody. He refers to the marriage counselor's testimony that he is a good father and that in their sessions Kellie had never complained about Steven's parenting ability. Steven asserts that Kellie's testimony concerned isolated incidents that took place over a seventeen-year marriage and that his version of those events is quite different than Kellie's. Steven points out that, until recently, Kellie had left the children with him every weekend and that there had been no problems associated with his parenting ability during those weekends. Steven also cites the testimony of his and Kelley's mutual friends that Steven is a good father. Steven refers to the ad litem's recommendation that joint custody is in the best interest of the children and that the court ordered the visitation schedule that the ad litem had formulated.
Kellie asks this court to reweigh the conflicting testimony given at trial and find differently than the circuit court regarding the appropriateness of joint custody; however, credibility determinations are left to the circuit court and we will not reweigh the evidence. Newman v. Ark. Dep't of Human Servs. , 2016 Ark. App. 207, at 13, 489 S.W.3d 186, 194. On our de novo review, we hold that the circuit court did not clearly err in finding that joint custody is in the best interest of the children.
C. Child Support
Kellie argues that the circuit court erred when it failed to determine Steven's income in setting the amount of child support. We agree, and on this point we reverse and remand.
As a rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion. Hall v. Hall , 2013 Ark. 330, 429 S.W.3d 219. Before a court can refer to the child-support chart, the payor's income must be determined. Ark. Sup. Ct. Admin. Order 10, Section III; Office of Child Support Enf't v. Pittman , 70 Ark. App. 487, 490-91, 20 S.W.3d 426, 428 (2000). Our court has previously held that it is reversible error for the circuit court to fail to determine the payor's income in setting the amount of child support. See Ryburn v. Ryburn , 2014 Ark. App. 108, at 11, 432 S.W.3d 102, 109 (circuit court erred by not including a determination of the father's income or a list of explanations for deviating from the child-support guidelines);
*870 Blalock v. Blalock , 2013 Ark. App. 659, 2013 WL 5964485, (reversed and remanded for further findings because the child-support order did not contain a determination of the payor's income or reference to the guidelines and did not recite whether the amount of child support deviated from the family-support chart).
In the present child-support order, the circuit court stated that the "child support obligation is hereby modified to the amount of $349.00 per month pursuant to Administrative Rule 10" and that the amount was "based on the additional time the Defendant keeps the children." The circuit court made no determination of income in its order; thus, we reverse and remand for the circuit court to do so.
Affirmed in part; reversed and remanded in part.
Glover and Murphy, JJ., agree.

Cooper is distinguishable from the instant case in that the primary issue in Cooper is whether a parent may relocate with the child without the consent of the other parent; however, the threshold issue for the court to resolve is the type of custody the parents share.